**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

BRIAN ROLLER AND KALOS STREET L.L.C.,

                                Plaintiffs,              **MEMORANDUM &**
                                                         **ORDER**
                                                         CV 19-5285 (GRB)(VMS)

                -against-

RED PAYMENTS L.L.C.,

                                Defendant.


-----------------------------------------------------------------X

Plaintiffs Brian Roller ("Roller") and Kalos Street, L.L.C. ("Kalos Street") (collectively, "Plaintiffs") bring this putative class action against Defendant Red Payments L.L.C. ("Red Payments" or "Defendant").[1]  Plaintiffs seek declaratory relief under the Declaratory Judgment Act and assert federal claims pursuant to the Fair Credit Reporting Act ("FCRA") and Electronic Funds Transfer Act ("EFTA"), as well as state law claims for unjust enrichment, conversion, and fraud.  Before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## FACTUAL & PROCEDURAL BACKGROUND

The factual background, as alleged in Plaintiffs' Amended Complaint ("FAC"), DE 65, along with the exhibits attached thereto, is as follows:

This action concerns certain payment processing accounts that Red Payments opened in the name of Kalos Street, which is wholly owned by Roller.  DE 65 ¶¶ 40-44; DE 65-1.  Plaintiffs contracted with Red Payments in order to obtain point-of-sale ("POS") equipment for processing

---

[1] While organized under the laws of New York, Red Payments, LLC is a single-member LLC whose sole member is a citizen of Puerto Rico. Accordingly, for jurisdictional purposes, Red Payments, LLC is a citizen of Puerto Rico. First Data Global Leasing – formerly a defendant to this action – has since been dismissed per stipulation of the parties. *See* Docket Entry ("DE") 81.

credit or debit card payments, as well as for payment processing and related services connected to the use of this POS equipment.  DE 65 ¶¶ 23–26, 32-35.  While Red Payments enrolls businesses in these types of contracts, it merely acts as an intermediary; the actual equipment and services are provided by third parties (such as former defendant First Data Global Leasing ("First Data")).  *Id.* ¶¶ 2, 32, 35.

On August 22, 2016, Roller executed an "Application & Agreement" on behalf of Kalos Street with Red Payments to lease a "USB Card Swiper" and "Gateway Virtual Terminal" and obtain associated payment processing services (the "USB Swiper Agreement"). DE 65 ¶ 40; DE 65-1.  Pursuant to this agreement, Roller opened an account at PNC Bank in his name to facilitate autopayments for the services under the contract, which Plaintiffs had begun using by the end of August 2016.  DE 65 ¶¶ 41–42.  Within one week, however, Plaintiffs received an additional package that contained multiple mobile card readers called "VX520s."  *Id.* ¶ 43.  Plaintiffs did not request this additional equipment, nor was it mentioned in the USB Swiper Agreement.  *Id.* Nevertheless, Red Payments enrolled Plaintiffs in a separate lease account for this equipment, which, like their first account, came with associated rental fees.  *Id.* ¶¶ 44, 50.  The Red Payments sales representative who arranged the USB Swiper Agreement soon informed Roller  that this practice – i.e., opening new accounts (with associated payment obligations) on top of a customer's existing account, without that customer's knowledge or consent – was a scheme perpetrated by Defendants known in the industry as "slamming." *Id.* ¶¶ 4-9, 47. Apparently, this particular market is particularly complex, wherein any given payment processing transaction may involve half a dozen intermediaries or more.  *Id.* ¶¶ 2-3, 24-27.  As a result, it is a relatively simple matter for Red Payments to "slam" customers with additional, unauthorized accounts, which the unwary clients end up paying the fees for simply out of ignorance of the details of the payment processing system. *Id.* ¶¶ 4-9.

Suspicious of this unrequested equipment, Plaintiffs reached out to Red Payments and First Data to request the application and related paperwork that should have accompanied the new account, to no avail. *Id.* ¶¶ 48-49.  Despite multiple attempts to resolve this issue with both Red

2

Payments and First Data, Plaintiffs were unable to obtain either a copy of a contract for the additional account, or a cancelation or refund for the mobile card readers and related payment processing charges. *Id.* ¶¶ 48–50. Defendants nevertheless continued to charge Plaintiffs for the account; Plaintiffs refused to pay these charges and ultimately closed their bank account at PNC Bank altogether in February 2017. *Id.* ¶¶ 51, 53. Sometime during this process, Red Payments assessed a $499.00 cancelation fee on Plaintiffs' accounts and ultimately referred the uncollected charges to debt collectors. *Id.* ¶¶ 52–53. As a result, Plaintiffs have now received notices from collection agencies seeking to collect these unpaid fees, and may have had their respective credit scores harmed as a result of these collection efforts. *Id.* ¶ 54.

On May 1, 2018, Plaintiffs, filing as "Brian Roller, d/b/a/ Kalos Street L.L.C.," filed a class action complaint in the United States District Court for the Eastern District of Pennsylvania. DE 1. Plaintiffs asserted substantially the same claims in the original complaint as in the FAC. *Compare* DE 1 ¶¶ 67-109 *with* DE 65 ¶¶ 70-112. In July 2018, upon the order of Judge Mitchell S. Goldberg of the Eastern District of Pennsylvania, Red Payments produced a copy of the contract establishing the VX520 mobile card reader account (the "VX520 Agreement"). *See* DE 15; DE 65 ¶ 44. According to Plaintiffs, however, this document was inauthentic: Plaintiffs claim that the purported contract was both "unsigned [and] unacknowledged" and "an obvious forgery." DE 65 ¶¶ 44–45, 48–49, Ex. B. In September 2018, First Data moved to transfer the case to this Court pursuant to 28 U.S.C. § 1404(a), which motion was granted by District Judge Goldberg on August 12, 2019. *See* DE 49. Subsequent to the transfer, Plaintiffs filed the FAC, asserting the same claims but now including new allegations addressing the purportedly fictitious VX520 Agreement. On May 13, 2020, Red Payments filed the instant motion to dismiss claims I through VI pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] *See* DE 79. This Order follows.

---

[2] Count VII had been asserted only against First Data.

## STANDARD OF REVIEW

"The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "The court must also construe all reasonable inferences that can be drawn from the complaint in the light most favorable to plaintiff." *Id.* at 75 (citation omitted). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "plausibility standard" is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, "[a] dismissal pursuant to Rule 12(b)(6) 'is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him or her to relief.'" *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).

While the court "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss," the court is "generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels*, 369 F.3d at 217.

## DISCUSSION

### 1. *Fair Credit Report Act (Count III)*

Citing to 15 U.S.C. §§ 1681b, 1681n, and 1681o, plaintiff Roller seeks recovery under the FCRA based upon Defendant presumably obtaining a consumer credit report in connection with the unauthorized VX520 account. The FCRA "protects consumers from 'person[s]' who obtain consumer reports for an impermissible purpose." [3]   *Belfon v. Credit Check Total*

---

[3] A "consumer report" is defined in the FCRA as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." 15 U.S.C. § 1681a(d)(1).

4

*Consumerinfo.com, Inc.*, No. 218CV00408ADSSIL, 2018 WL 4778906, at *4 (E.D.N.Y. Oct. 1, 2018) (citing 15 U.S.C. § 1681b(f)).  As alleged by Roller, Defendant obtains consumer reports about each potential "consumer or merchant entity" client as part of a routine practice whenever opening a new payment processing account  *See* DE 65 ¶ 84.  Roller therefore concludes (at least, by implication) that such a report was necessarily obtained without a permissible purpose under the FCRA when Red Payments opened the unauthorized VX520s account.  *Id.* ¶¶ 85-88.

In its motion to dismiss, Red Payments argues that, because Roller did not specifically allege that Defendant obtained *his* personal credit report, rather than Kalos Street's, his FCRA claim fails for insufficiency.  *See* DE 79-1 at 10.  There is no dispute that plaintiff Roller failed to make such an allegation. In Plaintiffs' opposition brief, they fail to point to any allegation in the complaint clearly indicating that Red Payments specifically obtained *Roller's* report. Rather, as Red Payments observes, "[a]t most, Plaintiff Roller alleges generally . . . that '[e]ach time that Defendants open a new payment protection account or starts a new financial service, they obtain, review, and use a "consumer report," … about the consumer *or merchant entity* for whom the account is opened or the service started.'"  *Id.* (emphasis in the original) (quoting DE 65 ¶ 84). Roller fails even to allege that Defendants specifically obtained a "consumer report" in connection with either payment processing account at issue here – let alone that Defendants obtained *his* credit report instead of Kalos Street's.

Plaintiff Roller argues that it would be "inappropriate to weigh competing inferences at the Rule 12(b)(6) stage."  DE 79-9 at 9. Yet the only relevant allegation made by the plaintiff, as set out above, contains precisely the kind of "conclusions, and [ ] formulaic recitation of the elements" against which *Twombly* cautions.  Suffice it to say that where plaintiff Roller attempts to recover under the FCRA for improperly obtaining his credit report, but fails or declines to allege that such an event occurred, the claim cannot withstand Rule 12(b)(6) review.  While it is true that this Court must make "all reasonable inferences" in plaintiff's favor, construing the complaint as currently pleaded as presenting the allegation that Roller's *personal* consumer report was obtained by Red

Payments for *this* transaction would take the Court out of the realm of inference and into that of brazen assumption.  Thus, this claim is dismissed without prejudice to repleading.[4]

   2.   *Electronic Funds Transfer Act (Count IV)*

   Pursuant to the EFTA, "[n]o person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than—(1) in response to a request or application therefor; or (2) as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor."  15 U.S.C. § 1693i(a).  Plaintiff Roller contends that Red Payments "violate[d] this prohibition" every time they opened an unauthorized payment processing account, including the unauthorized VX520s account at issue here, by issuing a means of access to the unsuspecting client's bank account.  DE 65 ¶ 42-43, 51-53.

   It is undisputed that plaintiffs' EFTA claim was filed beyond the applicable one-year statute of limitations.  *See* DE 79-1 at 16–17; 79-6 at 12.  Plaintiff Roller therefore attempts to resist dismissal through invocation of the doctrine of equitable tolling.  *See* DE 79-6 at 12.

   Whether the EFTA permits equitable tolling remains an unsettled question in the Second Circuit.  *See Apostolidis v. JP Morgan Chase & Co.*, No. 11-CV-5664 (JFB)(WDW), 2012 WL 5378305, at *7 n.3 (E.D.N.Y. Nov. 2, 2012).  However, even assuming, *arguendo*, that equitable tolling is permissible under the EFTA, Plaintiff falls short in attempting to justify its application here. As summarized in *Apostolidis*:

> The Court is aware that failure to comply with a statute of limitations is not jurisdictional, and therefore subject to equitable tolling, in appropriate circumstances. The deadlines may be equitably tolled in "rare and exceptional circumstance[s]," in which a party is "prevented in some extraordinary way from exercising [her] rights." "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are

---

[4] Red Payments further argues that plaintiff Roller's FCRA claim should be dismissed because any credit report obtained in relation to the payment processing accounts was for commercial purposes, and therefore not covered by the FCRA. *See* DE 79-1at 11-13. However, because this Court finds that, as currently pleaded, the complaint fails to allege that any specific report was actually obtained, it need not reach this question at this juncture.

so extraordinary that the doctrine should apply." The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff."

*Id.* at \*7 (internal citations omitted). As equitable tolling provides a defense to untimely filing, the only "extraordinary circumstances" of concern in this analysis are those that "prevent[] [plaintiff] from filing his [complaint] on time." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

Here, Plaintiffs not only alleged that they became suspicious upon receiving the VX520s around September 2016, but also that such suspicion was confirmed no later than October 2016. DE 65 ¶¶ 43, 46–48. Plaintiffs further alleged that they closed their payment account at PNC Bank in February 2017, clearly indicating that they were aware even at that time that efforts to resolve this matter short of litigation would not prove fruitful. *Id.* ¶¶ 48–53. Yet Plaintiff Roller waited a full fifteen months after closing the PNC Bank account before filing this action. Nevertheless, Roller contends that Red Payments' refusal to cooperate in his "attempts to resolve this matter informally" warrants the application of equitable tolling here. DE 79-6 at 12. But Red Payments' refusal to provide information or paperwork regarding the allegedly unauthorized payment processing account in no way "prevent[ed] [Roller] from exercising [his] rights" to file this suit. *Apostolidis*, 2012 WL 5378305, at \*7; *see also Smith*, 208 F.3d at 17. Plaintiff Roller fails to show either that he has acted with reasonable diligence or that there were any extraordinary circumstances that prevented him from exercising his rights. Thus, this claim is dismissed with prejudice.[5]

### 3. Declaratory Judgment (Count I)

Plaintiffs seek declarations from the Court (1) that the VX520 Agreement is not a binding contract, (2) that Plaintiffs and the Class are therefore not bound by its terms, (3) that "Defendants' practice of opening unauthorized accounts is unlawful," and (4) that "Defendants are liable to Plaintiffs and the Class for damages caused by that practice" ("Requested Declarations (1)–(4)").

---

[5] As with Roller's FCRA claim, Defendant raises additional grounds for dismissing Roller's EFTA claim: specifically, that the EFTA does not apply to accounts belonging to corporate entities, or to accounts established for commercial purposes. *See* DE 79-1 at 14-16. However, because this Court finds that Roller's EFTA claim is untimely, it need not address these arguments.

DE 65 ¶ 76.  The Second Circuit has established that "a court must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. If either prong is met, the action must be entertained." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted).

Defendant raises three grounds for dismissal of the claim for declaratory relief. First, in response to Requested Declarations (1) and (2), Defendant argues that Plaintiffs have failed to present any allegations indicating that the requested declarations will be prospectively useful.  DE 79-1 at 28-29 (citing *Storms v. United States*, No. 13-CV-811 MKB, 2015 WL 1196592, at *21 (E.D.N.Y. Mar. 16, 2015) ("[B]ecause declaratory relief is intended to operate prospectively, courts have found no basis for declaratory relief where only past acts are involved.")).  Specifically, Defendant points out that Plaintiffs have not pleaded any facts suggesting that it might seek to enforce the VX520 Agreement in the *future*, and so they merely seek a declaration that Defendant's *past acts* constitute a wrong.  But Defendant's conduct is not the only activity at issue.  Plaintiffs allege that, as a result of Defendant referring its uncollected invoices to a debt collector, the debt collector "began to make debt collection calls to Plaintiffs and continues to do so," Plaintiffs "have received notices from collection agencies," and Plaintiffs credit scores "ha[ve] been harmed as a result of [the] efforts to collect" on these unpaid fees.  DE 65 ¶ 53-54.  Clearly, the first two Requested Declarations would help to resolve these issues by "clarifying and settling" whether the underlying debt is valid.  Accordingly, Defendant's motion is denied as to the first two Requested Declarations.[6]

Second, Defendant contends that the third Requested Declaration—i.e., that the "practice of opening unauthorized accounts is unlawful"—is tautological and serves no useful purpose. DE 79-1 at 29.  Indeed, when considered in the context of the prior two Requested Declarations, it is

---

[6] Defendants further argue that these Requested Declarations would not resolve any uncertainty because "Plaintiffs have been quite certain as to their rights since day one."  DE 79-1 at 27-28.  This is a clear (arguably, even obvious) misinterpretation of the principles behind declaratory relief, which contemplate an *official adjudication* of legal relations as providing the desired relief from uncertainty.

difficult to see how this further declaration would provide significant further clarity in "settling the legal relations in issue."  More significantly, however, this proposed declaration is clearly inappropriate in light of one of the prudential factors (beyond the two factors listed above) to be considered in determining whether to consider a declaratory judgment action, to wit, "whether there is a better or more effective remedy" than declaratory relief.  *Storms*, 2015 WL 1196592, at *21.  A determination that this practice is "unlawful" is much better suited to an affirmative legal claim (with attendant remedies), such as those dismissed for other reasons in this Order, than to a declaratory judgment action.  The fourth Requested Declaration—i.e., that "Defendants are liable to Plaintiffs and the Class for damages caused by that practice"—exhibits the same issue; indeed, as Defendant observes, this declaration "is clearly duplicative of Plaintiffs' substantive counts." De 79-1 at 29.  Thus, the claim for declaratory relief is dismissed with prejudice as to the second two Requested Declarations.

### 4.  State Law Claims

Defendant challenges the remaining state law claims based on standing, untimeliness under the statute of limitations, and pleading defects as construed under Pennsylvania substantive law[7] and under Rule 9(b) of the Federal Rules of Civil Procedure.

### a.  Unjust Enrichment (Count II)

To establish a claim for unjust enrichment, a plaintiff must allege "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 667–69 (Pa. Super. 2007).  Plaintiffs affirmatively assert in the FAC that they "refused to pay the invoices received for the unwanted account," that they then "closed the bank account at

---

[7] The parties agree that Pennsylvania law governs this dispute, which appears to be correct.  *See U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 154 (2d Cir. 2019) ("Transfers under [28 U.S.C.] § 1404(a) by a court that *has* jurisdiction are adjudicated in the transferee state under the law of the transferor state.").  Although the transfer order in this case was occasioned by a forum selection clause in the USB Swiper Agreement, this has no bearing on the § 1404(a) proper venue analysis.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 57 (2013).

PNC" to which Red Payments had access, and that Red Payments then sent the "uncollected invoices" to a debt collector.   DE 65 ¶¶ 51-53.   Thus, where Plaintiffs have not and, if the allegations are credited, cannot plead that they paid any money to Defendant, there can be no unjust enrichment.   Plaintiffs attempt to salvage their claim by pointing to allegations in the FAC that "Plaintiffs and the other members of the Class . . . were improperly charged fees" and so "were unjustly deprived of money obtained by Defendants as a result of the improper fees." *Id.* ¶¶79-80. Without any specific factual content, however, allegations of this sort are not sufficient to plead an unjust enrichment claim, as they merely amount to a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 662.   Thus, the claim for unjust enrichment is dismissed without prejudice.[8]

### b. *Conversion (Count V)*

"Conversion is defined under Pennsylvania law as 'the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification.'" *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 600 (E.D. Pa. 2016).   Thus, to plead a claim for conversion, Plaintiffs must allege an actual "deprivation of [their] right of property in, or use or possession of, a chattel." *Stevenson v. Econ. Bank of Ambridge*, 413 Pa. 442, 451 (1964).   As established above, however, Plaintiffs affirmatively assert that they refused to pay any of the invoices on the unauthorized account—which means they were never deprived of a property interest in any of their funds.   As with their unjust enrichment claim, Plaintiffs attempt to salvage their conversion claim by pointing to allegations in the Complaint that "Defendants interfered with Plaintiffs' and Class members' possession of [their] money by wrongfully taking money directly from their accounts."   DE 65 ¶¶ 99-101.   But once more, without any specific

---

[8] Plaintiffs further assert that "a wrongfully obtained right to a debt" can qualify as the requisite "benefit." DE 79-6 at 16-17.   Even were the Court to assume that Red Payments obtained such a "right to a debt" of Plaintiffs, the cases Plaintiffs cite in support of this proposition do not compel this conclusion. *SEI Investments Global Funds Servs. v. Citibank, N.A.*, 100 F. Supp. 3d 447 (E.D. Pa. 2015) did not involve a "right to a debt," as the plaintiff in that case actually spent funds on the defendant's behalf. Meanwhile, in *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009), the court at least found that whether a debt balance qualified as a "benefit" was "a factual question that cannot be resolved on a motion to dismiss." *Id.* at 1279. But *Abels* applied Florida law, and Plaintiffs provide no case applying Pennsylvania law – nor can this Court find any – in support of Plaintiffs' proposition.

factual content, these allegations only amount to a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 662.[9]  Thus, the claim for conversion is dismissed without prejudice.

      *c. Fraud (Count VI)*

To plead fraud under Pennsylvania law, a plaintiff must set forth "(1) A representation (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 290 (Pa. Super. 2010) (citing *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank,* 801 A.2d 1248, 1250–51 (Pa.Super.2002)).  Plaintiffs allege that Defendant "failed to disclose material facts" (i.e., the fact that it intended to open additional unauthorized accounts), rather than that it made affirmative fraudulent statements.  DE 65 ¶¶ 103-105.  Nevertheless, "[a] fraud claim based on intentional non-disclosure (i.e. omission) has the same elements as fraud, except that 'an omission is actionable as fraud only where there is an independent duty to disclose the omitted information.'" *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 783 (E.D. Pa. 2008) (quoting *Duquesne Light Co. v. Westinghouse Electric Corp.,* 66 F.3d 604, 612 (3d Cir.1995)).  Defendant's motion to dismiss is therefore predicated in part on Plaintiffs' purported failure to plead that Defendant had such an independent duty.  Defendant also challenges the particularity of plaintiffs' allegations under Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 183 (E.D.N.Y. 2018) (quoting *United States ex rel.*

---

[9] The fact that, for both the unjust enrichment and conversion claims, Plaintiffs point to allegations that Defendant deprived *other class members* of their money does not alter this conclusion.  "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

*Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)).   As Defendants observe, "[u]nder Pennsylvania law, a duty to disclose does not normally arise between parties to a particular transaction 'unless there is a confidential or fiduciary relationship between the parties.'"   *De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP*, 792 F. Supp. 2d 812, 843 (E.D. Pa. 2011) (quoting *Gaines v. Krawczyk,* 354 F.Supp.2d 573, 586 (W.D.Pa.2004)).

It is undisputed that no such confidential or fiduciary relationship existed here.   Rather, to contest this point Plaintiffs point out that "[c]oncealment of a material fact can amount to actionable fraud if the seller intentionally concealed a material fact to deceive the purchaser."   DE 79-6 at 21 (quoting *Debbs v. Chrysler Corp.*, 2002 PA Super 326, ¶ 55 (2002)). However, the cases that Plaintiffs cite in support explicitly note that "mere silence without a duty to speak will not constitute fraud." *Debbs*, 2002 PA 326, ¶ 55; *Wilson v. Donegal Mut. Ins. Co.*, 410 Pa. Super. 31, 41 (1991).   Nevertheless, resting entirely upon a decision from Utah, Plaintiffs argue that the "unauthorized opening of accounts . . . constitutes actionable fraud by omission." (citing *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1162 (D. Utah 2018)).   Unfortunately for Plaintiffs, such is not the law in Pennsylvania.   *Compare Mitchell*, 355 F. Supp. 3d at1162 ("[A] duty of disclosure may exist when the circumstances are such that the failure to disclose something would violate a standard requiring conformity to what the ordinary ethical person would have disclosed." (internal quotation marks omitted)) *with De Lage Landen*, 792 F. Supp. 2d at 843 ("[A] duty to disclose does not normally arise between parties to a particular transaction unless there is a confidential or fiduciary relationship between the parties, which, in turn, rarely arises in a typical transactional setting unless one party surrenders substantial control over some portion of its affairs to the other." (internal quotation marks and citation omitted)).   The FAC does not contain language that would spell out a fiduciary or confidential relationship between Plaintiffs and Defendants, but instead only describes a "typical transactional setting."   The complaint also fails to comply with the requisites of Rule 9(b): as Defendant observes, Plaintiffs "fail to plead what specifically 'Defendants' said, who specifically said it, and where and when the statements were made."   DE 79-1 at 27.   Plaintiffs' arguments to the contrary (e.g., that the "speaker" of the misrepresentation

was the sales representative who *later informed Plaintiffs* of the "slamming" scheme) require a level of inference that necessarily fails to satisfy Rule 9(b).  Therefore, the fraud claim is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED as follows:

1. Defendant's motion to dismiss Plaintiffs' Amended Complaint is DENIED with respect to the first two declarations sought under Count I for declaratory relief;

2. Defendant's motion is GRANTED with respect to the remaining claims as follows:

    a. Plaintiffs' claims under the FCRA (Count III) and for unjust enrichment (Count II), conversion (Count V) and fraud (Count VI) are DISMISSED without prejudice; and

    b. Plaintiffs' claims under the EFTA (Count IV) and for the latter two declarations sought under Count I are DISMISSED with prejudice.

The Clerk of the Court is directed to enter judgment consistent with this Order.

**SO ORDERED.**

Dated: Central Islip, New York
       February 11, 2021

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge
