UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

BRIAN ROLLER and KALOS STREET, L.L.C.,

                            Plaintiffs,

     -against-

RED PAYMENTS L.L.C.,

                            Defendant.

-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 19-5285 (GRB) (VMS)

FILED
CLERK
4:29 pm, Sep 12, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**GARY R. BROWN, United States District Judge:**

      Plaintiffs Brian Roller ("Roller") and Kalos Street L.L.C. ("Kalos Street") (collectively "Plaintiffs") brought this putative class action against Defendant Red Payments L.L.C. ("Red Payments" or "Defendant") and First Data Global Leasing[1] seeking declaratory relief under the Declaratory Judgment Act and alleging claims pursuant to the Fair Credit Reporting Act ("FCRA") and Electronic Funds Transfer Act ("EFTA"), as well as common law claims for unjust enrichment, conversion and fraud. By Order dated February 11, 2021, the Court dismissed certain of Plaintiffs' claims. Plaintiffs subsequently filed a Second Amended Complaint seeking declaratory and injunctive relief and alleging claims pursuant to the FCRA as well as claims for common law fraud. Presently before the Court is Defendant's motion to dismiss the Second Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Rule 12"). For the reasons set forth below, Defendant's motion is granted.

---

[1] First Data Global Leasing, formerly a defendant to this action, has been dismissed per stipulation of the parties. *See* Docket Entry ("DE") 81.

## BACKGROUND

**1. Factual Background**

The following facts, drawn from the Second Amended Complaint are assumed to be true for purposes of the pending motion to dismiss and are viewed in the light most favorable to Plaintiffs, the non-moving party.

This action concerns payment processing accounts that Red Payments opened in the name of Kalos Street, which is wholly owned by Roller.  DE 86 ¶¶ 39-43, Ex. A.  Plaintiffs contracted with Red Payments in order to obtain point-of-sale ("POS") equipment for processing credit or debit card payments, as well as for payment processing and related services connected to the use of this POS equipment.  *Id.* ¶¶ 22-24, 31-34.  While Red Payments enrolls businesses in these types of contracts, it merely acts as an intermediary; the actual equipment and services are provided by third parties, such as former defendant First Data Global Leasing ("First Data").  *Id.* ¶¶ 2, 31, 34.

On August 22, 2016, Roller executed an "Application & Agreement" on behalf of Kalos Street with Red Payments to lease a "USB Card Swiper" and "Gateway Virtual Terminal" and obtain associated payment processing services (the "USB Swiper Agreement").  *Id.* ¶ 39, Ex. A.  Pursuant to this agreement, Roller opened an account at PNC Bank in his name to facilitate autopayments for the services under the contract, which Plaintiffs had begun using by the end of August 2016.  *Id.* ¶¶ 40-41.  Within one week, however, Plaintiffs received an additional package that contained multiple mobile card readers called "VX520s."  *Id.* ¶ 42.  Plaintiffs did not request this additional equipment, nor was it mentioned in the USB Swiper Agreement.  *Id.*

Nevertheless, Red Payments enrolled Plaintiffs in a separate lease account for this equipment, which, like their first account, came with associated rental fees.  *Id.* ¶¶ 43, 49.  The

2

Red Payments' sales representative who arranged the USB Swiper Agreement informed Roller that this practice – *viz.* opening new accounts (with associated payment obligations) on top of a customer's existing account, without that customer's knowledge or consent – was a scheme known in the industry as "slamming." *Id.* ¶¶ 4-10, 46.  The payment processing services market is complex, wherein any given payment processing transaction may involve half a dozen intermediaries or more.  *Id.* ¶¶ 2-3, 23-26.  As a result, it is a relatively simple matter for Defendant to "slam" customers with unauthorized accounts and fees, which the unwary clients pay due to their ignorance of the payment processing system.  *Id.* ¶¶ 4-10, 27-29.

Suspicious of the unrequested equipment, Plaintiffs reached out to Red Payments and First Data to request the application and related paperwork that should have accompanied the new account, to no avail.  *Id.* ¶¶ 47-48.  Despite multiple attempts to resolve this issue with both Red Payments and First Data, Plaintiffs were unable to obtain either a copy of a contract for the additional account, or a cancelation or refund for the mobile card readers and related payment processing charges.  *Id.* ¶¶ 47-49.  Defendants nevertheless continued to charge Plaintiffs for the account.  *Id.* ¶ 52.  Plaintiffs refused to pay these charges and ultimately closed their bank account at PNC Bank in February 2017.  *Id.* ¶¶ 50, 52.  Sometime during this process, Red Payments assessed a $499.00 cancelation fee on their accounts and referred the uncollected invoices to debt collectors.  *Id.* ¶¶ 51-52.  As a result, Plaintiffs aver they have received notices from collection agencies seeking to collect the unpaid fees and may have had their credit scores harmed because of these collection efforts.  *Id.* ¶ 53.

2. Procedural Background

On May 1, 2018, Plaintiffs, filing as "Brian Roller, d/b/a Kalos Street L.L.C.," commenced this class action against Defendants First Data and Red Payments in the United

3

States District Court for the Eastern District of Pennsylvania. DE 1. In July 2018, pursuant to an order of Judge Mitchell S. Goldberg in the Eastern District of Pennsylvania, Red Payments produced a copy of the contract establishing the VX520 mobile card reader account (the "VX520 Agreement"). DE 15; DE 65 ¶ 44. According to Plaintiffs, however, this document was inauthentic: the VX520 Agreement was both "unsigned [and] unacknowledged" and "an obvious forgery." DE 65 ¶¶ 44-45, 48-49, Ex. B. In September 2018, First Data moved to transfer the case to this Court pursuant to 28 U.S.C. §1404(a), which was granted by Judge Goldberg on August 12, 2019. DE 49.

Following the transfer, Plaintiffs Roller and Kalos Street filed a First Amended Complaint against Defendants First Data and Red Payments, asserting substantially the same claims as set forth in the original complaint, but now including new allegations concerning the purportedly fictitious VX520 Agreement. DE 65. The case was reassigned from Judge Margo K. Brodie to the undersigned on January 29, 2020.

On May 19, 2020, Defendant First Data was dismissed from the case. DE 81. Defendant Red Payments moved to dismiss the First Amended Complaint pursuant to Rule 12, and on February 11, 2021, the Court granted in part[2] and denied in part[3] the motion. DE 83. Plaintiffs filed a Second Amended Complaint on March 17, 2021, asserting claims under the FCRA and state law and seeking declaratory and injunctive relief. DE 86.

At a pre-motion conference held before the undersigned on May 4, 2021, the Court stayed Defendant's application for leave to file a motion to dismiss the Second Amended Complaint pursuant to Rule 12 pending resolution of the issue of whether or not First Data

---

[2]The Court dismissed with prejudice the third and fourth declarations in Count I and the claims under the EFTA in Count IV. The Court dismissed without prejudice the claims for unjust enrichment in Count II, violation of the FCRA in Count III, conversion in Count V, and common law fraud in Count VI. *Id*.
[3]The Court denied the motion with respect to the first two declarations sought in Count I for declaratory relief.

4

and/or Red Payments had obtained a credit report for Plaintiffs for the allegedly fraudulent account. DE 89. The Court thereafter dismissed Plaintiffs' FCRA claim with prejudice for failure to obtain records of the credit inquiries at issue. *See* Order dated November 16, 2021; *see also* DE 93. On December 2, 2021, the Court granted the parties' proposed briefing schedule for Defendant's motion to dismiss the remaining claims for common law fraud and declaratory and injunctive relief. *See* DE 94.

On February 21, 2022, Defendant Red Payments filed the instant motion to dismiss the Second Amended Complaint (hereinafter the "complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. DE 95. This Order follows.

## DISCUSSION

### Standard of Review

Generally, motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB), 2017 WL 9485714, at *3-4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein. *See also Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020). The gravamen of that standard, of course, is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible.

### Analysis

Plaintiffs assert claims of common law fraud[4] based on both affirmative misrepresentations and omissions. DE 86 ¶¶ 84-97. In addition, Plaintiffs seek declaratory and injunctive relief. *Id.* ¶¶ 69-75.

---

[4] Pennsylvania law governs Plaintiffs' common law fraud claims. *See United States Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 154 (2d Cir. 2019) ("Transfers under § 1404(a) by a court that *has* jurisdiction are

**(1) Common Law Fraud**

To plead fraud under Pennsylvania law, Plaintiffs must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) that the resulting injury was proximately caused by the reliance." *Shuker v. Smith & Nephew, PLC,* 885 F.3d 760, 778 (3d Cir. 2018) (internal quotation marks and citation omitted). Moreover, "[a] fraud claim based on intentional non-disclosure (i.e. omission) has the same elements as fraud, except that 'an omission is actionable as fraud only where there is an independent duty to disclose the omitted information.'"[5] *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 783 (E.D. Pa. 2008) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995)) (holding "Pennsylvania Courts have adopted the duty to speak requirement in fraud by omission cases."); *see also Chiarella v. U.S.*, 445 U.S. 222, 228 (1980) (holding "[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak"). Plaintiffs' fraud claims are also governed by the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This standard requires a

---

adjudicated in the transferee state under the law of the transferor state."). Although the transfer order in this case was occasioned by a forum selection clause in the USB Swiper Agreement, this has no bearing on the proper § 1404(a) venue analysis. *See Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 57 (2013).

[5]Although Plaintiffs reassert in the Second Amended Complaint that Red Payments "failed to disclose material facts" (i.e., the fact that it intended to open additional accounts), DE 89, the complaint is again devoid of any allegations of a confidential or fiduciary relationship between the parties and instead only describes "a typical transactional setting." *De Lage Landen Fin. Servs, Inc. v. Rasa Floors, LP*, 792 F. Supp. 2d 812, 843 (E. D. Pa. 2011) ("[A] duty to disclose does not normally arise between parties to a particular transaction unless there is a confidential or fiduciary relationship between the parties, which, in turn, rarely arises in a typical transactional setting unless one party surrenders substantial control over some portion of its affairs to the other."). Accordingly, Plaintiffs' fraud claim based on an omission fails and is dismissed.

plaintiff to "(1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 183 (E.D.N.Y. 2018) (internal quotation marks and citation omitted).

Defendant seeks to dismiss the fraud claims, contending principally that Plaintiffs have failed to plausibly allege (a) justifiable reliance on an alleged false statement; or (b) damages proximately caused by an alleged false statement. The Court agrees.

**(a) Justifiable Reliance**

"Before fraud will be found, a plaintiff must demonstrate that he justifiably relied on the false statement." *Chase v. Creegan*, No. 1681 WDA 2015, 2017 WL 1240046, at *5 (Pa. Super. Ct. Apr. 4, 2017); *see also* Restatement (Second) of Contracts § 164, Comment d ("A misrepresentation, even if relied upon, has no legal effect unless the recipient's reliance on it is justified."). To be justified, reliance upon the representation of another must be reasonable. *See Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 840 (Pa. Super. Ct. 2005). It is not sufficient "to merely assert that a statement is fraudulent and that reliance on the statement induced some action on the party's behalf, nor is it enough to aver that a knowingly false statement was made for the purpose of misleading another into reliance upon it." *Gordan v. McManus*, No. 972 EDA 2013, 2014 WL 10917627, at *18 (Pa. Super. Ct. June 30, 2014) (internal quotation marks and citations omitted). Whether reliance on the representation is justified "depends on whether the recipient knew or should have known that the information supplied was false." *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002). The recipient of a misrepresentation is required to use his senses and is barred from recovery if he "blindly relies upon a misrepresentation the falsity of which would be patent to him if he utilized his

opportunity to make a cursory examination or investigation." *Silverman v. Bell Savings & Loan Ass'n*, 533 A.2d 110, 115 (Pa. Super. Ct. 1987) (internal quotation marks and citations omitted).

Plaintiffs assert that Red Payments made the following material misrepresentations: (i) the fictitious VX520 Application that misled others, including First Data into relying upon it, DE 86 ¶ 86; (ii) sending the box of unwanted equipment with the intent of misleading others, including First Data, into relying upon it, *id.* ¶ 87; and (iii) sending written statements reflecting bills for the second account, including termination charges, with the intent of misleading others, *id.* ¶ 88. None of these representations state an actionable fraud claim.

First, with respect to the VX520 Application, the Second Amended Complaint alleges the following:

> The phony Application attached hereto as Exhibit B is an affirmative misrepresentation that amounts to fraud and fraud in the inducement. The phony Application was doctored up to look like the customer provided consent for the additional account: that is false, something Red Payments knew was false at the time because it perpetrated or recklessly disregarded whether it was true or not. Red Payments did so with the intent of misleading others, including First Data, into relying upon it, which caused injury to the Plaintiffs. A forged agreement does not create an agreement. Nor is it even a business or a personal transaction. Rather, a forged agreement is a material misrepresentation, and a definitive, detailed, specific proof of fraud.

DE 86 ¶ 86.

Plaintiffs concede that they were not aware of the Application until after the instant lawsuit had commenced and Red Payments produced it pursuant to a Court order in the Eastern District of Pennsylvania. *See id.* ¶ 47 ("The phony VX520 Agreement (Ex. B) was only produced by Red Payments after ordered to do so by the PA Court."). Upon receipt of the Application, its falsity was obvious -- Plaintiffs averred the Agreement was unsigned, contained "sloppily applied white out," and was an "obvious forgery." *See id.* ¶ 44. Thus, Plaintiffs' reliance on the fraudulent representation was not justified. *Cf. Porreco*, 811 A.2d at 571 (stating

"we hesitate to find reliance justified where the party claiming reliance had an adequate opportunity to verify the allegedly fraudulent statements"); *see also Drelles*, 881 A.2d at 840 (holding that the "recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him"). Plaintiffs' assertion that they were injured by First Data's reliance on Red Payment's misrepresentation is equally unavailing. "Under Pennsylvania law, only a person who himself detrimentally relied on the misrepresentation in question may bring a fraud action." *Feingold v. Graff*, No. 12-1090, 2012 WL 2400998, at *4 (E.D. Pa. June 26, 2012) (holding "a plaintiff who alleges that he was injured by someone else's detrimental reliance on a false statement has no cause of action in fraud"); *see Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-523, 2010 WL 4103553, at *4 (W.D. Pa. Oct. 18, 2010) (allegations that plaintiff suffered injury based on others' reliance on misrepresentations are insufficient to state a cause of action for fraud).

Likewise, Plaintiffs have failed to allege justifiable reliance on the receipt of unwanted equipment. The Second Amended Complaint alleges:

> Sending the box of unwanted equipment is also an affirmative misrepresentation that amounts to fraud and fraud in the inducement. The equipment was never asked for or consented to; sending it on the basis of it being authorized is a false action that is false, something Red Payments knew was false at the time because it perpetrated or recklessly disregarded whether it was true or not. Red Payments did so with the intent of misleading others, including First Data, into relying upon it, which caused injury to the Plaintiffs. It is a material misrepresentation, and a definitive, detailed, specific proof of fraud.

DE 86 ¶ 87. However, Plaintiffs were not misled: (i) they "were immediately suspicious of the unwanted equipment;" (ii) "no one touched the equipment;" and (iii) the equipment "was left in the box it came from, where it remains today." *Id.* ¶ 45. Inasmuch as Plaintiffs were aware of the falsity of the representation and took no action in reliance upon the receipt of the unwanted equipment, Plaintiffs cannot assert that their reliance on the misrepresentation was reasonable.

*See Klemow v. Time Inc.*, 352 A.2d 12, 16 n.17 (Pa. 1976) (holding "[t]he successful maintenance of a cause of action for fraud includes, inter alia, a showing that plaintiff acted in reliance on the defendant's misrepresentations"); *see also Townsend v. City of Chester*, No. CV 19-1023, 2020 WL 4347368, at *11 (E.D. Pa. July 29, 2020) (dismissing fraud claim where plaintiff failed to assert he acted in reliance on the false representation and suffered to his detriment). Nor, as discussed above, can Plaintiffs maintain a claim for common law fraud based on others' reliance, including First Data. *See Tulp v. Educational Comm'n for Foreign Med. Grads.*, 376 F. Supp. 3d 531, 544 (E.D. Pa. 2019) (holding plaintiff "cannot maintain a cause of action for fraud based on others' reliance"); *see also Feingold*, 2012 WL 2400998, at *4.

Finally, Plaintiffs have failed to plead justifiable reliance upon the receipt of invoices for the second account. The Second Amended Complaint asserts:

> Sending written statements reflecting bills for the second account, including charges required to terminate the unwanted and never-consented-to account, is also an affirmative misrepresentation that amounts to fraud. Plaintiffs received statements that reflect bills for the second account, including termination charges. Authorizing, causing or permitting these bills to be sent, while knowing that the second account was not consented-to and there was no reasonable, rational basis for charging the customer, is a material misrepresentation done with the intent of misleading others, and amounts to fraud.

DE 86 ¶ 88. Contrary to acting in reliance on the fraudulent billing statements, Plaintiffs "refused to pay the invoices received for the unwanted account and rental of unwanted equipment and switched to a new payment processor." *Id.* ¶ 50. Plaintiffs' assertions reflect that they knew the representations were false, and therefore reliance on the purported misrepresentations cannot be said to be reasonable. *See Klemow*, 352 A.2d at 16 n.17; *see also Townsend*, 2020 WL 4347368, at *11. To the extent Plaintiffs aver that "others" relied on the billing statements, as discussed, Plaintiffs cannot maintain a claim for fraud based on others'

10

reliance. *See Tulp*, 376 F. Supp. 3d at 544; *see also Feingold*, 2012 WL 2400998, at *4; *Kester*, 2010 WL 4103553, at *4.

In sum, because each of the alleged misrepresentations is not coupled with any subsequent reasonable reliance undertaken by Plaintiffs, no claim of fraud arises. Accordingly, Plaintiff's common law fraud claims against Red Payment cannot survive Defendant's motion to dismiss.

Plaintiffs' fraud claims also fail on the injury prong, *viz*. damages proximately caused by reliance on the alleged false statements.

**(b) Damages**

"Damages for fraud are limited to what losses were immediately and proximately caused by the fraud." *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 492 A.2d 405, 410 (Pa. Super. Ct. 1985) (citation omitted). Plaintiffs are therefore "entitled to all pecuniary losses which result as a consequence of [their] reliance on the truth of the representations." *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1257 (Pa. Super. Ct. 1983); *see Crawford v. Pituch*, 84 A.2d 204, 207 (Pa. 1951).

Plaintiffs allege the following injuries arising out of Red Payments' purported fraud: (i) fees incurred for the second VX520 account and a $499.99 termination fee on the accounts, DE 86 ¶¶ 49-52, 88; (ii) issuance of a negative credit report against them, *id.* ¶¶ 81, 83; (iii) receipt of notices from collection agencies seeking unpaid fees allegedly owed, *id.* ¶ 53; and (iv) harm to their credit scores, *id*. Plaintiffs have failed to plead cognizable injury.

With respect to fees incurred for the VX520 account, Plaintiffs aver that Red Payments "continued to charge Plaintiffs for the account even though they were not being used," and "then added a $499.99 cancellation fee on the accounts." *Id.* ¶¶ 50-52. However, Plaintiffs do not

allege that they were injured from any amounts paid to Defendant. To the contrary, Plaintiffs state that they "refused to pay the invoices received for the unwanted account and rental of the unwanted equipment and switched to a new payment processor." DE 86 ¶ 50.

In addition, there is no indication of a negative credit report generated against Plaintiffs based on the allegations of this case. At the pre-motion conference held before the undersigned on May 4, 2021, the Court ordered Plaintiffs to file a letter within 90 days stating whether or not First Data and/or Red Payments had, in fact obtained a credit report for Plaintiffs for the allegedly fraudulent account. DE 89, 90. Thereafter, the Court provided Plaintiffs an additional 90 days to obtain the records of credit inquiries at issue and advised Plaintiffs that failure to obtain such records by November 9, 2021 would result in dismissal of the FCRA claims with prejudice. *See* Status Report Order dated August 11, 2021. On November 16, 2021, the Court dismissed Plaintiffs' FCRA claims with prejudice for failure to obtain records of any negative credit report. *See* Order dated November 16, 2021.

Further, Plaintiffs have not plead cognizable damages arising from the alleged receipt of notices from collection agencies seeking unpaid fees. DE 86 ¶¶ 52-53. Although Plaintiffs assert in their opposition papers that "the Second Amended Complaint alleges circumstances, including the issuance of overdue invoices and debt collection notices,[6] from which the Court can plausibly and confidently infer negative impact on Plaintiffs' credit," DE 95-5 at 5, the assertions are deficient of any specific facts and fail to set forth damages that are "immediate and proximate consequences" of the alleged deceit practiced on the Plaintiffs. *Lokay*, 492 A.2d at

---

[6]Notably, examination of a debt collection notice sent to Plaintiffs seeking unpaid fees allegedly owed which Plaintiffs attached to their response in opposition to Defendants' prior motion to dismiss indicated that the creditor listed in the debt collection letter was not Red Payments, but rather First Data Global Leasing. DE 22-1 ¶ 6, Ex. A.

410; *cf. Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 646 (M.D. Pa. 2017) (dismissing fraud claim where cursory allegations of injury based on lost "time, money, and embarrassment" were devoid of factual support" and lacked "particularity").

Finally, Plaintiffs' "belief" that their credit scores have been "harmed as a result of Red Payments' efforts to collect on unpaid fees," *id.* ¶ 53, without further factual support falls well short of both Rule 9(b) and Rule 12 standards. *See Crawford,* 84 A.2d at 207 (holding that "consequential, speculative, and even conjectural" damages are not recoverable in a fraud action and only those damages that are "immediate and proximate consequences of the deceit practiced upon the plaintiffs" may be recovered); *Metcalf v. Lynch*, No. 4:11-cv-127, 2011 WL 13087090, at *13 (M.D. Pa Oct. 31, 2011) (same); *cf. Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999) (holding plaintiff's "belief, in and of itself, is simply insufficient to prove a claim of fraud").

Inasmuch as Plaintiffs have not pled any legally cognizable damages proximately caused by reliance on the alleged false statements, Plaintiffs' fraud claims fail on this additional ground.

Accordingly, Defendant's motion to dismiss Plaintiffs' common law fraud claims is granted.

**(2) Declaratory and Injunctive Relief**

Plaintiffs seek both declaratory and permanent injunctive relief. Specifically, Plaintiffs seek declarations that "(1) the unauthorized phony application (Ex. B) is not a binding contract, and (2) Plaintiffs and the Class are therefore not bound by any of the terms set forth in the document." DE 86 ¶ 75. Plaintiffs also seek a permanent injunction "enjoining Red Payments from performing further unfair and unlawful acts as alleged" in the Second Amended Complaint. *Id*. at 22.

### a. Declaratory Judgment

The Declaratory Judgment Act authorizes a court to "declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought" where there is an "actual controversy" within the court's jurisdiction. 28 U.S.C. § 2201(a). Declaratory judgment is a form of relief, not a substantive cause of action. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) (The Act "is procedural in nature, and merely offers an additional remedy to litigants"). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "A district court has broad discretion to decide whether to render a declaratory judgment." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993). However, "[a] plaintiff cannot maintain a claim for declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act only created a procedural mechanism and not an independent cause of action." *Limtung v. Thomas*, No. 19-CV-3646 (RPK), 2021 WL 4443710, at *9 (E.D.N.Y. Sept. 28, 2021) (internal quotation marks and citation omitted); *see Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (holding that the Declaratory Judgment Act "gives a district court the discretion to declare the legal rights and other legal relations of any interested party seeking such declaration. But that discretion does not extend to the declaration of rights that do not exist under law. Like a preliminary injunction, a declaratory judgment relies on a valid legal predicate"); *see also Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) (holding "a request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief") (internal quotation marks and citation omitted).

Because Plaintiffs' underlying substantive claims are dismissed for failure to state a claim,[7] Plaintiffs are not entitled to independent declaratory relief. *See, e.g., Prignoli v. Bruczynski*, No. 20-CV-907 (MKB), 2021 WL 4443895, at *13 (E.D.N.Y. Sept. 28, 2021) (holding plaintiff is not entitled to independent declaratory relief where the court dismissed the underlying substantive claims); *KM Enters., Inc. v. McDonald*, No. 11 CV 5098 (ADS), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012) (stating that "[a]s to the only remaining causes of action in the Amended Complaint – namely, the counts for declaratory judgment and an injunction – the Plaintiff cannot survive a motion to dismiss by relying on these claims as independent causes of action"), *aff'd* 518 F. App'x 12 (2d Cir. 2013); *see also Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21 Civ. 4627 (KPF), 2022 WL 3156179, at *17 (S.D.N.Y. Aug. 8, 2022) (holding that where "a plaintiff's substantive claims are dismissed, a standalone claim for declaratory judgment is properly dismissed as well") (collecting cases).

Accordingly, Defendant's motion to dismiss Plaintiffs' remaining declaratory judgment cause of action is granted.

b. **Permanent Injunctive Relief**

Similarly, it is well settled that "a request for injunctive relief is not a separate cause of action." *Milligan v. GEICO Gen. Ins. Co.*, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022) (internal quotation marks and citation omitted). "[R]ather, the injunction is merely the remedy

---

[7] Notably, the factual predicates for the Court's preservation of the two requested declarations in the undersigned's prior Memorandum and Order, DE 83 at 8, are no longer present. Having found no evidence that the alleged issuance of overdue notices and calls from collection agencies had a negative impact on Plaintiffs' credit scores or that they suffered other cognizable injury, the Court dismissed Plaintiffs' FCRA claims. Moreover, the alleged underlying debt no longer exists as Red Payments released Plaintiffs "from any obligations owed under the Merchant Application and Agreement attached as Exhibit B to the Second Amended Complaint." *See* DE 94. Further, putative class members cannot be bound by an alleged Agreement between Red Payments and Plaintiffs. *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (holding that in order for a party to be bound or liable under a contract there must be a contract between the parties). Finally, to the extent Plaintiffs invoked the "phony application" and its terms as part of their fraud claims, their request for a declaratory judgment cannot be maintained as they failed to set forth a cognizable cause of action for fraud.

sought for the legal wrongs alleged in the . . . substantive counts." *Id.*; *see also KM Enters., Inc.*, 2012 WL 4472010, at *20 (same). That is to say, an injunction relies on a valid legal predicate. *Prignoli*, 2021 WL 4443895, at *12 ("injunctions are remedies, not causes of action"). Thus, in light of the dismissal of Plaintiffs' underlying substantive claims for failure to state a claim, Plaintiffs are not entitled to independent injunctive relief.

Accordingly, Defendant's motion to dismiss Plaintiffs' remaining cause of action for injunctive relief is granted.

## CONCLUSION

Based on the foregoing, the Court grants Defendant's motion in its entirety and dismisses the Second Amended Complaint. The Clerk of the Court is directed to enter judgment and close the case.

Dated: Central Islip, New York
September 12, 2022

/s/ Gary R. Brown
HON. GARY R. BROWN
United States District Judge